IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 9, 2019 Session

**KENNETH BROWN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 11-02623, 11-07432     Lee V. Coffee, Judge**

_____

**No. W2017-01755-CCA-R3-PC**

_____

The Petitioner, Kenneth Brown, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief, arguing (1) that trial counsel provided ineffective assistance in failing to present Agent James Davis and Beatrice Vaulx[1] as witnesses at trial and in failing to request an instruction on proximate cause of death; and (2) that he is entitled to a second post-conviction hearing based on post-conviction counsel's ineffectiveness.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Lance R. Chism, Memphis, Tennessee, for the Petitioner, Kenneth Brown.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background.**  This case concerns the July 3, 2010 shooting of individuals outside a home on Northmeade Avenue in Memphis, Tennessee.  Following this incident, the Petitioner was indicted for first degree premeditated murder, thirteen counts of attempted first degree murder, thirteen counts of aggravated assault, one count of reckless endangerment, and one count of employment of firearm during a dangerous felony.  State v. Kenneth Brown, No. W2013-00329-CCA-R3-CD, 2014 WL 5092906, at *1 (Tenn.

---

[1] Although the transcript from the post-conviction hearing identifies this individual as "Beatrice Baulx," an exhibit to the post-conviction hearing shows that this individual's name is actually "Beatrice Vaulx."

Crim. App. Oct. 9, 2014), perm. app. denied (Tenn. Feb. 13, 2015). Prior to trial, one count of attempted first degree murder and one count of aggravated assault were dismissed. Id.

The facts presented at trial showed that on July 3, 2010, the Petitioner and two co-defendants, all of whom were armed, opened fire on a large group of people attending a party outside a home on Northmeade Avenue. Id. at *8. As a result of this shooting, one victim, Kimberly Jamerson, died of a single gunshot wound and a second victim, Lamarcus Moore, received a gunshot wound to his leg. Id. at *2-4, *6. Though no other victims sustained injuries during the shooting, numerous individuals were outside the home and could have been shot. Id. at *1.

The shooting incident occurred because of an earlier dispute between the Petitioner and his two co-defendants and several individuals at the home on Northmeade Avenue. Id. at *1-3, *5-6, *8. Several witnesses[2] testified at trial that someone from the victims' group at the Northmeade home "flagged down" the Petitioner and one co-defendant, who had been driving by the house, for the purpose of purchasing some marijuana. Id. at *2-3, *5. After this drug deal allegedly took place, the Petitioner and the co-defendant drove away but returned shortly thereafter, claiming they were owed $5. Id. at *1-3, *5, *8. After receiving assurances by Felix Williams, one of the home's residents, that he would look into the issue regarding the owed money, the Petitioner and the co-defendant drove away but returned several minutes later with a third man, also a co-defendant. Id. at *1-3, *5. At that point, Felix Williams gave the Petitioner and his two co-defendants $5 to cover the debt for the marijuana. Id. at *1-3, *5, *8. After receiving this money, the Petitioner's group started to drive away and nearly ran over someone from the victims' group, who then threw a beer can inside the car the Petitioner's group was in. Id. at *2-3, *5, *8. When this occurred, the Petitioner's group stopped, got out of their vehicle, and engaged in a "fist fight" with several people from the victims' group. Id. After this fight, the Petitioner's group made statements indicating that they would be back. Id. at *2-3, *6.

The Petitioner, following his arrest, told police that after the fight, he and the co-defendants returned home, where "guns started coming out" and one of his co-defendants began "talking about going back around there." Id. at *8. The Petitioner then drove with his two co-defendants to a location on Helmwood Street. Id. The Petitioner's group jumped out of their car and fired their guns for a period of time before returning to the car and driving away. Id. The Petitioner stated that he fired "six to eight shots" into the air

---

[2] We acknowledge that we do not use titles when referring to every witness. We intend no disrespect in doing so. Presiding Judge John Everett Williams believes that referring to witnesses without proper titles is disrespectful even though none is intended. He would prefer that every adult witness be referred to as Mr. and Mrs. or by his or her proper title.

from his "Glock .45" during the incident. He said that one co-defendant fired two shots from his shotgun and that while he was unsure what firearm the other co-defendant was shooting, that the co-defendant fired shots for a longer period of time than the other two men. Id.

From the Northmeade location, where Kimberly Jamerson was shot, officers collected 9mm cartridge cases and 7.62x39mm cartridge cases. Id. at *9. At the Helmwood location, where the Petitioner and his co-defendants fired their guns, officers collected .30 carbine cartridge cases, .45 auto cartridge cases, .223 Remington caliber cartridge cases, and .20 gauge shot shell cases. Id. Special Agent Steve Scott, a forensic scientist with the Tennessee Bureau of Investigation, opined that while the 7.62x39mm cartridges are a .30 caliber class bullet, the .30 caliber class bullet fragments recovered from the Northmeade area were not consistent with the 7.62x39mm casings. Id. He also said it would be very rare to see a 7.62x39mm cartridge loaded with the type of .30 caliber bullet found at the Northmeade location. Id. Agent Scott also opined that the .30 carbine cartridge cases were all fired from the same gun and that they were typically loaded with the type of bullet collected during Jamerson's autopsy. Id.

Following a jury trial, the Petitioner was convicted of one count of first degree premeditated murder, twelve counts of attempted first degree murder, twelve counts of aggravated assault, one count of reckless endangerment, and one count of employment of a firearm during a dangerous felony. Id. at *10. At sentencing, the trial court merged the aggravated assault convictions with the attempted murder convictions and imposed a sentence of life imprisonment plus 308 years. Id.

On direct appeal, the Petitioner argued that the evidence was insufficient to sustain his murder and attempted murder convictions and that the trial court erred in failing to suppress his confession. Id. at *1. Thereafter, this court affirmed the trial court's judgments, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. Id. at *18.

**Post-Conviction.** On May 14, 2014, the Petitioner filed a pro se petition for post-conviction relief, alleging twenty-one ineffective assistance of counsel claims, six trial court errors, and one claim of ineffective assistance of appellate counsel. As relevant to the issues raised on appeal, the Petitioner specifically alleged in his pro se petition that trial counsel provided ineffective assistance in failing to present a forensic expert to introduce evidence of the gunshot residue tests and in failing to request a continuance to ensure that Beatrice Vaulx testified at trial. Following the appointment of post-conviction counsel, the Petitioner filed an amended petition, this time alleging, in pertinent part, that trial counsel was ineffective in failing to investigate, interview and subpoena material witnesses, including Beatrice Vaulx, to testify at trial and in failing to

subpoena or present testimony from Agent James Davis about the results from the gunshot residue tests. Neither the pro se petition nor the amended petition explicitly included an issue regarding trial counsel's ineffectiveness in failing to request a proximate cause of death jury instruction.

At the July 7, 2017 post-conviction hearing, post-conviction counsel asserted that she had "issued multiple subpoenas for Beatrice Vaulx." She and the court then had the following discussion regarding her extensive attempts to locate Beatrice Vaulx:

| | |
|---|---|
| [Post-Conviction Counsel]: | [Beatrice Vaulx] is not to be found. I have sent . . . her several letters, both of which were returned to me. I attempted to have her subpoenaed. They [came back that she was] not to be found. Additionally, I tried to add her on Facebook. It was a last resort, but I did find her on Facebook. She would not accept my friend request. I don't know if it is because I've already sent her all these letters, and she is not wanting to be involved, and I believe that that was the problem [trial counsel] had, as well. But, if I can't get her served, I can't get her here. And, if she is evading service, I don't know. . . . |
| | . . . . |
| The Court: | For the record, Beatrice [V]aulx, that [the Petitioner] continues to complain about, . . . , that [the Petitioner] says, "I want to see," has been subpoenaed at least twice by [post-conviction counsel at] an address on Ladue . . . . [On] July 7, 2017, Shelby County Sheriff's office indicated that, after diligent search and inquiry, she is not to be found in Shelby County, Tennessee. [The deputy a]ctually spoke to a person [who] lives at that address [who s]aid she didn't live |

- 4 -

there, and had no idea as to where [Beatrice Vaulx] lived.

That is not the first time a subpoena has been issued for Ms. [V]aulx. A subpoena was also issued for the setting on November 10, 2016. And, after diligent search and inquiry, she is not to be found. [The deputy s]poke to a person who identified herself as Ms. [V]aulx's mother. . . . [She] says that [Ms. Vaulx] is out of the state due to a sickness of a relative, and did not know how to get in contact with Ms. [V]aulx.

[Post-conviction counsel] has sub-poenaed [Ms. Vaulx] at least twice. [The] Shelby County Sheriff's office cannot locate her.

Following this discussion, the Petitioner presented testimony from Agent James Davis and trial counsel and testified in his own behalf.

Agent James Davis, a forensic scientist with the Tennessee Bureau of Investigation, testified that prior to the Petitioner's trial, he received and tested gunshot residue tests from four different individuals—Cleotha Norwood, Mark Chambers, Nakia Greer, and Felix Williams. For the tests from Norwood and Chambers, Agent Davis found that although the "[e]lements indicative of gunshot residue were absent," the results could not eliminate the possibility that Norwood and Chambers could have fired, handled, or were near a gun when it fired. For the test from Greer, Agent Davis found that "[e]lements indicative of gunshot residue were inconclusive," which meant that the results could not eliminate the possibility that Greer could have fired, handled, or was near a gun when it fired. Finally, for the test from Williams, Agent Davis found that "[e]lements indicative of gunshot residue were present," which meant that the results indicated that Williams could have fired, handled, or was near a gun when it fired. Agent Davis explained that washing hands with soap and water, the passage of time, and certain other activities affected the presence of gunshot residue on an individual's hands. He confirmed that the post-conviction hearing was his first appearance in this case and that he had never been subpoenaed by either party to testify at trial.

Agent Davis clarified that if gunshot residue was absent or if the gunshot residue test was inconclusive, this did not mean that the individual did not fire a gun. He also said that regardless of whether Norwood, Chambers, Greer, or Williams had gunshot residue on their hands, this evidence did not tell him whether the Petitioner was guilty of the crimes charged. Agent Davis acknowledged that he did not conduct any gunshot residue tests on the Petitioner.

Trial counsel testified that he received a report from Officer Merritt indicating that he had talked with Beatrice Vaulx, who said that on July 4, 2010, she heard several shots being fired and when she looked outside her window, she saw an unidentified African-American man being helped into a red vehicle parked in front of her residence. Vaulx said that she observed this man placing a sawed-off shotgun into the backseat of the red vehicle; however, she asserted that she would not be able to identify this man because it was dark and she did not know him. Trial counsel said that after receiving this information, he attempted to interview Beatrice Vaulx but was unable to find her. He said that he was never able to locate Vaulx, even though he hired private investigators to find and talk to her. He also said that he subpoenaed Vaulx for trial, but she failed to appear. Trial counsel acknowledged that Vaulx's testimony could have been beneficial to the Petitioner at trial because it placed other shooters at the scene, which corroborated evidence that there were two groups of shooters the night of the incident. He said his defense theory at trial was that someone else fired the bullet that killed Kimberly Jamerson.

Trial counsel said he attempted to get the results from the gunshot residue tests introduced at trial through a witness other than Agent James Davis; however, the State objected, and this objection was sustained. Trial counsel acknowledged that it would have been a good idea to subpoena Agent Davis because it would have shed light on whether the bullet that killed Kimberly Jamerson came from the Petitioner and his co-defendants or Mark Chambers and his group. Trial counsel said that it was a difficult job defending the Petitioner because the evidence in this case included the Petitioner's confession to police and the cartridge casings that were collected from the Helmwood location, where the Petitioner and his co-defendants fired their guns.

Trial counsel said that while admitting the gunshot residue report would have been helpful to the Petitioner's defense, which is what he tried unsuccessfully to do at trial, Agent Davis's testimony about his gunshot residue report would not have been helpful. He explained that Agent Davis's testimony would not have benefitted the Petitioner because Agent Davis would have stated, as he did at the post-conviction hearing, that a person could fire a gun and not have the presence of gunshot residue and that a person could have the presence of gunshot residue and never have fired a gun. Trial counsel said that although he was aware, through discovery, of a phone conversation between Officer

Merritt and Beatrice Vaulx, he never received a statement from Vaulx herself because the police were unsuccessful in obtaining such a statement.

At the conclusion of trial counsel's testimony, the post-conviction court noted that trial counsel had filed a motion to suppress, arguing that the police had illegally held the Petitioner for forty-eight hours without probable cause. The court noted that trial counsel had vigorously contested the admission of the Petitioner's statement but that the court ultimately denied the motion to suppress. The court also noted that when the Petitioner's statement acknowledging that he fired shots into the air was admitted, the State proceeded under a theory of criminal responsibility.

The Petitioner testified that trial counsel erred in failing to call Beatrice Vaulx. He also maintained that trial counsel failed to do everything he could have done to show that Kimberly Jamerson was killed by friendly fire from the victims' group during the shootout. In addition, the Petitioner claimed that trial counsel pursued a self-defense theory and requested a self-defense instruction at trial, even though he had instructed him not to pursue this defense. He asserted, "[T]his is not a self-defense case. This is a case where the proximate cause of death was in question." At that point, the post-conviction court stated for the record that it did not charge self-defense at the Petitioner's trial because it was not raised by the proof. When questioned about whether self-defense was an appropriate defense in his case, the Petitioner replied:

> By [trial counsel] alleging self-defense, it took my gun out of a direction in which I [shot it]—I said I shot it into the air, but [the self-defense theory] indicated to the jury—self-defense is constructively saying, "Hey, I killed this person, but it was in self-defense," which this is not one of those cases. This is a case when no one could honestly say—neither expert witness or anything could honestly say which direction this bullet came from that killed this victim. No one is saying that they had this weapon, so they don't know which way it came from.
>
> So we're, like, what's the proximate cause of death? And I felt like the perfect defense could have been requesting proximate cause of death jury instruction rather than self-defense.

At the conclusion of the post-conviction hearing, the court made several oral findings. Regarding trial counsel's failure to call Agent Davis, the court noted that Agent Davis's testimony "would not have made any difference at all" in the outcome of the Petitioner's trial because the gunshot residue tests "d[id] not indicate whether or not a person fired a gun." As to trial counsel's failure to call Beatrice Vaulx, the court recognized that although trial counsel subpoenaed Vaulx and requested that the

Petitioner's trial be delayed so that Vaulx could testify after concluding her sleep study, Vaulx never appeared at trial. The court also noted that despite post-conviction counsel's efforts to find Vaulx and subpoena her to testify at the post-conviction hearing, the Petitioner had been unable to present Vaulx's testimony at the post-conviction hearing. The post-conviction court stated that "[t]here [was] absolutely nothing that is before the Court that would indicate that [trial counsel] erred" or that trial counsel's performance "prejudic[ed]" the outcome of the Petitioner's case.

On August 4, 2017, the post-conviction court entered its written order denying relief. In it, the court determined that the Petitioner's testimony at the hearing was not credible. It noted that because the Petitioner had failed to present Beatrice Vaulx at the post-conviction hearing, the Petitioner was asking the court "to engage in rank speculation as to how any additional witnesses could have made a difference in the outcome of this trial," which it declined to do. The court held that Agent Davis's testimony about the results from the gunshot residue tests "would not have made a difference in the outcome of the [p]etitioner's trial" and that trial counsel had "made a well-informed tactical decision not to present such useless testimony at trial." In addition, the court held that the issue regarding the proximate cause of death instruction was waived because the Petitioner had failed to request this instruction at trial and that, in any case, the Petitioner had "wholly failed to prove how he was prejudiced by the Court's properly instructing the jury on the law." Ultimately, the post-conviction court concluded that trial counsel "was not deficient in his performance" and that the Petitioner had "failed to prove prejudice." Following entry of this order, the Petitioner filed a timely notice of appeal.[3]

## ANALYSIS

**I. Ineffective Assistance of Counsel.** The Petitioner contends that trial counsel provided ineffective assistance in failing to present Agent James Davis at trial, in failing to present Beatrice Vaulx at trial, and in failing to request a jury instruction on proximate cause of death. We conclude that the Petitioner is not entitled to relief on these claims.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal

---

[3] Following entry of the order denying post-conviction relief, the court appointed a different attorney to represent the Petitioner on appeal. However, after both parties filed appellate briefs, this court struck the Petitioner's brief, removed appellate post-conviction counsel, and appointed a new attorney, referenced above, to file a supplemental brief in this case and to represent the Petitioner on appeal.

unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

**A. Failure to Present Agent Davis.** The Petitioner argues that trial counsel was ineffective in failing to present Agent Davis at trial to testify about the results of the gunshot residue tests performed on Mark Chambers, Nakia Greer, and Felix Williams. He claims that because the jury heard evidence that several 7.62x39mm casings were found at the Northmeade location and because Agent Scott at trial could not rule out the possibility that the victim had been killed from a bullet from one of these 7.62x39mm casings, trial counsel should have presented Agent Davis to testify about the gunshot residue tests because this evidence would have supported the defense theory that

- 9 -

someone else was responsible for killing Kimberly Jamerson. The State counters that the post-conviction court properly denied relief on the basis that this evidence was "useless" and "would not have made any difference at all." Because trial counsel's failure to present Agent James Davis and the gunshot residue tests was neither deficient nor prejudicial, the Petitioner is not entitled to relief on this issue.

At trial, the State pursued a theory of criminal responsibility, and the Petitioner suggested that either Mark Chambers or Steven Chambers, who returned fire from the Northmeade location, was responsible for killing Kimberly Jamerson. We agree with the State that neither the gunshot residue tests nor the Agent Davis's testimony about these tests would have helped the Petitioner's case because this evidence would not have assisted the jury in determining who was responsible for killing Jamerson. Although the jury heard substantial proof that Mark and Steven Chambers returned fire, it nevertheless found that the Petitioner was responsible for Jamerson's death, either because of his own actions or because he was criminally responsible for the actions of his co-defendants. As to the Petitioner's claim that trial counsel was ineffective in failing "to present as much physical evidence as possible supporting the theory that someone from the Northmeade location fired the fatal shot," we note that the jury heard evidence about the 7.62x39mm casings found at the Northmeade location and still chose to convict the Petitioner of first degree premediated murder. Agent Davis specifically testified that the presence of gunshot residue on someone else's hands would not have exonerated the Petitioner. We agree with the State that neither the test results nor Agent Davis's testimony would have shown that Chambers, Greer, or Williams was responsible for killing Jamerson. Because trial counsel's failure to present Agent James Davis and the gunshot residue tests was neither deficient nor prejudicial, the Petitioner is not entitled to relief on this claim.

**B.  Failure to Present Beatrice Vaulx.** The Petitioner also asserts that trial counsel provided ineffective assistance in failing to present testimony from Beatrice Vaulx at trial. He claims that Vaulx would have testified that an unidentified person was in possession of an assault rifle, not just a shotgun, and that this unidentified person had fired the 7.62x39mm casings found at the Northmeade location and was responsible for killing Kimberly Jamerson. The State counters that the Petitioner cannot establish prejudice because he failed to present Beatrice Vaulx at the post-conviction hearing and that, regardless of his failure to present her, the Petitioner has not shown how trial counsel's failure to present Vaulx at trial was deficient or prejudicial. We agree with the State.

At the post-conviction hearing, trial counsel stated that after receiving Officer Merritt's report showing that he had talked to Beatrice Vaulx, he hired an investigator and attempted to interview Vaulx about what she observed the night of the shooting, but he was unable to find her. In addition, he said that although he subpoenaed Vaulx for

- 10 -

trial, she failed to appear.  Trial counsel opined that Vaulx's testimony could have been beneficial to the Petitioner at trial because it placed another shooter at the scene and suggested that someone, other than the Petitioner and his co-defendants, was responsible for firing the bullet that killed Kimberly Jamerson.

During the post-conviction hearing, the court recalled trial counsel's extensive efforts to present Vaulx at trial:

> [Trial counsel] did try to locate Ms. [V]aulx.  Had an investigator on the case.  Did all he [could] in order to have her in court.  Issued a subpoena for her.  She was not present.  Could not be located by an investigator.  Did continue the case so they could try to locate this person overnight, also.  Could not get Ms. [V]aulx in court as Ms. [V]aulx . . . was out of the state, and apparently [wa]s being evasive as to where she [wa]s, and the Shelby County Sheriff's office some  . . . five years later still can't locate Ms. [V]aulx."

The post-conviction court also noted, "[I]f [Ms. Vaulx] is not present in court under oath, the truthfulness, or the validity, or the strength, or the worth of that testimony, case law would indicate that I can't speculate as to what benefit it would have done, because she still, some six years later, is not present in court."

Later, the post-conviction court noted that during the Petitioner's trial, the Petitioner's other trial attorney sent an email, essentially asking the trial court to delay the start of the trial so that the defense could get Beatrice Vaulx in court to testify.  The email stated that the defense's investigator had informed them that Beatrice Vaulx was in a sleep study and that she would be in court once she was released from the hospital.  It also said that Vaulx was a material witness to the Petitioner's defense.  The court explained that after receiving this email, it held the Petitioner's trial until approximately 10:30 a.m. in the hope that Vaulx would appear, though she never did.  This email was admitted as an exhibit to the post-conviction hearing.  Still later, the post-conviction court noted that trial counsel made an offer of proof at trial regarding Beatrice Vaulx's purported testimony by using Officer's Merritt's report about his phone conversation with Vaulx.

Although the Petitioner asserts that trial counsel's failure to present Vaulx's testimony at trial was ineffective, the Petitioner never presented Vaulx's testimony at the post-conviction hearing.  This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."  Black

v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  The presentation of the witness at the post-conviction hearing is typically the only way for the petitioner to establish:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id.  Neither the post-conviction court nor this court may speculate on "what a witness's testimony might have been if introduced by defense counsel."  Id.

While the Petitioner acknowledges that Vaulx did not testify at the post-conviction hearing, he cites Tavarus U. Williams v. State, No. 02C01-9711-CR00423, 1998 WL 742348, at *7 (Tenn. Crim. App. Oct. 23, 1998), for the proposition that this court has, on occasion, made an exception to the general rule that witnesses must be presented at the post-conviction hearing.  The Petitioner asserts that Officer Merritt's report shows that Vaulx provided information about the unidentified shooter, that both trial counsel and post-conviction counsel summarized the substance of Vaulx's statement to police, and that post-conviction counsel made several attempts to secure Vaulx's presence at the hearing.  Consequently, the Petitioner urges this court to excuse his failure to present Vaulx at the post-conviction hearing.

In Tavarus U. Williams, the Petitioner appealed the denial of post-conviction relief, asserting that trial counsel failed to adequately investigate and assess his case and failed to effectively present proof at trial.  Id. at *1.  At the post-conviction hearing, the defense investigator testified that she found a key witness prior to trial that supported the Petitioner's claim of self-defense.  Id. at *3.  The morning of the Petitioner's trial, the investigator placed the name of this key witness and a summary of this witness's testimony in trial counsel's box at the public defender's office.  Id.  The investigator said that this particular witness attended the Petitioner's trial and was available to testify on the Petitioner's behalf, but trial counsel never called him to testify.  Id.  The investigator did not recall the name of the key witness and did not have a copy of the summary of this witness's statement.  Id.  Trial counsel testified at the post-conviction hearing that he was unaware of this witness.  Id.  This court concluded that trial counsel was ineffective in failing to present this key witness at trial, stating:

> We recognize that this witness' proposed testimony should have been produced at the post-conviction hearing under the general rule announced in Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990).

- 12 -

However, we think it is fundamentally unfair to hold this failure of proof against the appellant and, therefore, find the Black rule inapplicable under the facts of this case. To hold otherwise puts the appellant in a double bind from which he cannot escape: his lawyer's ineffectiveness condemns him not only at trial but prevents him from later proving that ineffectiveness at his post-conviction hearing.

The best evidence that the appellant had of the crucial testimony was [the investigator], and he did produce that proof at the hearing. Accordingly, because he produced independent proof of vital testimony that would have been available at the hearing but for his trial lawyer's ineffectiveness (in never discovering the witness, not calling him and losing all record of him), we hold that the appellant has established both prongs of the Strickland test.

Id. at *7.

We find Tavarus U. Williams distinguishable from the instant case. Unlike trial counsel's complete failure to pursue the key witness in that case, trial counsel in Petitioner's case made extensive efforts to ensure that Vaulx testified at trial. Trial counsel hired an investigator to locate her, subpoenaed her for trial, and successfully obtained a continuance during the Petitioner's trial in an attempt to secure her testimony. Unfortunately, despite all these efforts, trial counsel was unable to present Vaulx's testimony at trial. In light of trial counsel's conscientious and repeated efforts to obtain Vaulx's testimony, the Petitioner has failed to prove that trial counsel was deficient in not presenting Vaulx's testimony at trial.

In addition, the Petitioner has not shown that trial counsel's failure to present Vaulx prejudiced the outcome of his case. Vaulx's statement to police shows that her testimony would not have changed the outcome of the Petitioner's trial. Vaulx told police that after being awakened by the gunshots, she looked out her window and observed an unidentified African-American man, whom she did not know and could not identify, placing a sawed off shotgun in the backseat of a red vehicle. While Vaulx's statement might support the fact that there was another shooter the night of the incident, it does not show that the unidentified man she observed fired the fatal shot at Kimberly Jamerson. At trial, the jury heard substantial evidence suggesting that the shooters at the Northmeade location, who were returning fire from the shots fired by the Petitioner and his co-defendants, were responsible for Jamerson's death. Because the jury heard evidence suggesting that there were other shooters at the scene and because Vaulx never saw the man responsible for killing Kimberly Jamerson, we conclude that Vaulx's testimony would not have changed the outcome of the Petitioner's trial. Because trial

- 13 -

counsel's failure to present Vaulx at trial was neither deficient nor prejudicial, the Petitioner is not entitled to relief on this issue.

**C.** **Failure to Request an Instruction on Proximate Cause of Death.** The Petitioner also asserts that trial counsel provided ineffective assistance in failing to request an instruction on proximate cause of death. See 7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 42.14. He asserts that trial counsel's failure to request this instruction was both deficient and prejudicial because had it been given, the jury would have had reasonable doubt as to whether someone other than the Petitioner or his co-defendants caused Kimberly Jamerson's death, especially given that 7.62x39mm casings were found near the victim and that Agent Scott could not rule out the possibility that the fatal bullet came from one of these casings. While acknowledging that he failed to raise this issue in his pro se or amended post-conviction petition and that post-conviction counsel never questioned trial counsel about this issue at the post-conviction hearing, the Petitioner nevertheless asserts that he testified, without objection from the State, that trial counsel should have requested an instruction on proximate cause of death and that the post-conviction court ruled on this particular issue. Accordingly, the Petitioner claims that he properly preserved this issue for appellate review. See Marlon Yarbro v. State, No. W2017-00125-CCA-R3-PC, 2018 WL 4441364, at *7 (Tenn. Crim. App. Sept. 17, 2018) (concluding that the State waived its claim of procedural default when it failed to object to an issue raised by the petitioner at the post-conviction hearing that was not explicitly included in his petition for post-conviction relief). The State responds that the Petitioner has waived this issue by failing to raise it in his petition or amended petition and that waiver notwithstanding, the post-conviction court properly denied relief because trial counsel was not ineffective in failing to request this instruction. See T.C.A. §§ 40-30-104(d), (e), -106(d); Tenn. Sup. Ct. R. 28, § 8(D)(4). We conclude that although this issue is reviewable on its merits, the Petitioner is not entitled to post-conviction relief.

While the Petitioner admits that he did not explicitly include in his post-conviction petitions a claim of ineffective assistance of counsel based upon trial counsel's failure to request the proximate cause of death instruction, we note that the Petitioner did generally claim that he received ineffective assistance of trial counsel. See Marlon Yarbro, 2018 WL 4441364, at *6. At the post-conviction hearing, the Petitioner asserted, "[T]his is not a self-defense case. This is a case where the proximate cause of death was in question." Then, when questioned about whether self-defense was an appropriate defense in his case, the Petitioner replied:

> By [trial counsel] alleging self-defense, it took my gun out of a direction in which I [shot it]—I said I shot it into the air, but [the self-defense theory] indicated to the jury—self-defense is constructively saying, "Hey, I killed this person, but it was in self-defense," which this is not one

- 14 -

of those cases. This is a case when no one could honestly say—neither expert witness or anything could honestly say which direction this bullet came from that killed this victim. No one is saying that they had this weapon, so they don't know which way it came from.

So we're, like, what's the proximate cause of death? And I felt like the perfect defense could have been requesting proximate cause of death jury instruction rather than self-defense.

The record shows that neither post-conviction counsel nor the State asked the Petitioner or trial counsel any specific questions about trial counsel's failure to request the proximate cause of death instruction. However, when the Petitioner raised this issue during his testimony at the post-conviction hearing, the State never objected on the basis that the Petitioner failed to include this issue in any of his post-conviction petitions. See Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal."); Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."); see also Steven Tyler Nabi v. State, No. M2017-00041-CCA-R3-PC, 2018 WL 1721869, at *2 (Tenn. Crim. App. Apr. 9, 2018) (concluding that an issue was reviewable on its merits when the Petitioner raised the issue at the post-conviction hearing and the State failed to object that the issue was waived on the basis it had not been included in the pro se or amended petition). Had the State objected, the Petitioner could have amended his petition, which the Post-Conviction Procedure Act clearly contemplates and generously allows. See Tenn. Sup. Ct. R. 28, § 8(D)(5). For all these reasons, we conclude that the Petitioner did not waive his issue regarding trial counsel's failure to request the proximate cause of death jury instruction.

Although this issue is reviewable on its merits, we nevertheless conclude that the Petitioner has failed to establish that trial counsel was ineffective in failing to request this instruction. We note that the proximate cause of death instruction is given when there is evidence that the victim's death was caused by an independent, intervening act or omission that the defendant could not reasonably have anticipated. The "cause of death" instruction at issue states, in pertinent part, the following:

Before the defendant can be convicted of any degree of homicide, the State must have proven beyond a reasonable doubt that the death of the deceased was proximately caused by the criminal conduct of the defendant [, by the conduct of another for whom the defendant is criminally responsible, or both]. The proximate cause of a death is that cause which, in natural and continuous sequence, unbroken by any independent

- 15 -

intervening cause, produces the death and without which the death would not have occurred.

The defendant's conduct need not be the sole or immediate cause of death. The acts [or omissions] of two or more persons may work concurrently to proximately cause the death, and in such a case, each of the participating acts [or omissions] is regarded as a proximate cause. It is not a defense that the negligent conduct of the deceased may also have been a proximate cause of the death.

However, it is a defense to homicide if the proof shows that the death was caused by an independent intervening act [or omission] of the deceased or another which the defendant, in the exercise of ordinary care, could not reasonably have anticipated as likely to happen. However, if, in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede the defendant's original conduct, and the defendant's conduct is considered the proximate cause of death. It is not necessary that the sequence of events or the particular injury be foreseeable. It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.

. . . .

If you find that the defendant's acts, if any, did not unlawfully cause or contribute to the death of the deceased, or if you have a reasonable doubt as to this proposition, then you must find [him][her] not guilty.

7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 42.14 (footnotes omitted).

Here, the proof showed that either the Petitioner or his co-defendants fired the fatal bullet or someone from the Northmeade location fired the fatal bullet, but there was no evidence that Kimberly Jamerson's death was caused by an independent, intervening act or omission that the responsible party could not reasonably have anticipated. Because pattern jury instruction 42.14 was clearly inapplicable to the evidence presented at the Petitioner's trial, we conclude that the Petitioner has failed to show that trial counsel was deficient in failing to request this instruction or that such an instruction would have changed the outcome of the Petitioner's trial. Accordingly, the Petitioner is not entitled to relief on this issue.

- 16 -

**II. Second Post-Conviction Hearing.** Lastly, the Petitioner asserts that even if this court determines that trial counsel did not provide ineffective assistance at trial, he is nevertheless entitled to a second post-conviction hearing based upon post-conviction counsel's ineffectiveness. He claims that post-conviction counsel failed to adequately present numerous claims at the post-conviction hearing[4] and failed to allege in the amended petition that trial counsel was ineffective in not arguing that the police did not "scrupulously honor" the Petitioner's invocation of his right to remain silent during his interview. While acknowledging that petitioners are not entitled to effective post-conviction representation and that a post-conviction counsel's failure to follow the guidelines in Supreme Court Rule 28 does not warrant a second post-conviction petition, he claims that he is entitled to a second post-conviction hearing pursuant to footnote 10 in Thaddeus Johnson because post-conviction counsel failed to "provide him with the limited amount of due process that is required[.]" See Thaddeus Johnson v. State, No. W2014-00053-CCA-R3-PC, 2014 WL 7401989, at *9 n.10 (Tenn. Crim. App. Dec. 29, 2014), perm. app. denied (Tenn. May 18, 2015). The State counters that the Petitioner is

---

[4] Specifically, the Petitioner claims that post-conviction counsel failed to question trial counsel about the following claims he raised in his pro se petition:

(1) Trial counsel was ineffective for failing to request that fingerprint testing be conducted on the 7.62x.39 casings found near the victim's body at 2706 Northmeade.
(2) Trial counsel was ineffective for failing to retain an independent ballistics expert to assist the defense.
(3) Trial counsel was ineffective for failing to investigate and request the results of the victim's gunshot residue tests.
(4) Trial counsel was ineffective for failing to interview Kristie Norman in preparation for trial.
(5) Trial counsel was ineffective for failing to call Nakia Greer as a witness at trial.
(6) Trial counsel was ineffective for failing to call Lt. McCollum as a witness at trial.
(7) Trial counsel was ineffective for failing to request a continuance when key witness Beatrice [V]aulx did not show up at trial.
(8) Trial counsel was ineffective for failing to retain an expert in the area of bullet trajectory.

The Petitioner also asserts that post-conviction counsel failed to "personally knock on doors in an effort to find Ms. [V]aulx, failed to "ask[] trial counsel why he did not request a jury instruction on proximate cause of death," "failed to present Kristie Norman, Nakia Greer, and Lieutenant McCollum as witnesses at the post-conviction hearing," and "failed to make a closing argument at the close of proof at the post-conviction hearing." Lastly, the Petitioner criticizes post-conviction counsel's failure to call appellate counsel at the post-conviction hearing so she could question him about his ineffectiveness in "failing to raise 'essential issues' that were raised in the motion for new trial" and in "arguing on appeal that Petitioner was acting in self-defense at the time he fired his shots."

not entitled to a second post-conviction hearing because post-conviction counsel followed the requirements of Tennessee Supreme Court Rule 28. We conclude that because post-conviction counsel complied with the requirements of Rule 28 and because any issues not raised at the initial post-conviction hearing are waived, the Petitioner is not entitled to relief.

In considering this issue, we recognize that a petitioner is only entitled to limited due process rights in the post-conviction setting. The United States Supreme Court has held that the protections inherent in the Due Process Clause are less stringent in a state post-conviction proceeding than they are at trial or on direct review. Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987). Similarly, the Tennessee Supreme Court held that "the opportunity to collaterally attack constitutional violations occurring during the conviction process is not a fundamental right entitled to heightened due process protection." Burford v. State, 845 S.W.2d 204, 207 (Tenn. 1992). "All that due process requires in the post-conviction setting is that the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner." Stokes v. State, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting House v. State, 911 S.W.2d 705, 711 (Tenn. 1995)). In other words, a "full and fair hearing" merely requires "the opportunity to present proof and argument on the petition for post-conviction relief." House, 911 S.W.2d at 714.

As acknowledged by the Petitioner, there is no constitutional right to effective assistance of counsel in a post-conviction proceeding. Frazier, 303 S.W.3d at 680; Stokes, 146 S.W.3d at 60; House, 911 S.W.2d at 712. There is a statutory right to post-conviction counsel. T.C.A. § 40-30-107(b)(1); Frazier, 303 S.W.3d at 680. The rationale for this statutory right "is to afford a petitioner the full and fair consideration of all possible grounds for relief." Frazier, 303 S.W.3d at 680. "This statutory right does not, however, serve as a basis for relief on a claim of ineffective assistance of counsel in a post-conviction proceeding and does not include 'the full panoply of procedural protection that the Constitution requires be given to defendants who are in a fundamentally different position—at trial and on first appeal as of right.'" Id. (quoting House, 911 S.W.2d at 712).

Tennessee Supreme Court Rule 28 outlines the obligations and responsibilities of post-conviction counsel. Specifically, post-conviction counsel "shall be required to review the pro se petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims." Tenn. Sup. Ct. R. 28, § 6(C)(2). In addition, post-conviction counsel must file a certificate of counsel certifying that he or she has "thoroughly investigated the possible constitutional violations alleged by petitioner . . . and any other ground that petitioner may have for relief," has "discussed

- 18 -

other possible constitutional grounds with petitioner," has "raised all non-frivolous constitutional grounds warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law which petitioner has," is "aware that any ground not raised shall be forever barred . . . and ha[s] explained this to petitioner." Tenn. Sup. Ct. R. 28 § 6(C)(3), app. C. While these rules do establish a minimum standard of service to which post-conviction counsel are held, they do not provide a basis for relief from a conviction or sentence. Frazier, 303 S.W.3d at 681; David E. Breezee v. State, No. W2015-02251-CCA-R3-PC, 2017 WL 1907738, at *7 (Tenn. Crim. App. May 9, 2017), perm. app. denied (Tenn. Sept. 22, 2017); Charles Edgar Ledford v. State, No. E2016-00208-CCA-R3-PC, 2017 WL 837705, at *6 (Tenn. Crim. App. Mar. 3, 2017), perm. app. denied (Tenn. June 7, 2017); David Edward Niles v. State, No. M2014-00147-CCA-R3-PC, 2015 WL 3453946, at *7 (Tenn. Crim. App. June 1, 2015), perm. app. denied (Tenn. Sept. 17, 2015); Thaddeus Johnson, 2014 WL 7401989, at *9.

Moreover, even if we were inclined to agree with the Petitioner, a post-conviction counsel's Rule 28 violations do not warrant a second post-conviction hearing. David E. Breezee, 2017 WL 1907738, at *7 ("[T]his court has repeatedly held that post-conviction counsel's Rule 28 violations do not warrant a second post-conviction hearing."); Charles Edgar Ledford, 2017 WL 837705, at *7 ("This Court has repeatedly held that violations of Rule 28 by post-conviction counsel alone do not warrant a second post-conviction hearing."); Demarcus Keyon Cole v. State, No. W2015-01901-CCA-R3-PC, 2016 WL 2859196, at *11 (Tenn. Crim. App. May 11, 2016) ("This court has repeatedly held that violations of Rule 28 by post-conviction counsel do not afford the remedial right of a second post-conviction hearing."), perm. app. denied (Tenn. Sept. 26, 2016); David Edward Niles, 2015 WL 3453946, at *7 ("[T]his Court has repeatedly held that violations of Rule 28 by post-conviction counsel do not warrant a second post-conviction hearing."); Thaddeus Johnson, 2014 WL 7401989, at *9 ("[T]his Court has repeatedly held that violations of Rule 28 by post-conviction counsel do not warrant a second post-conviction hearing.").

Despite the extensive authority holding that violations of Rule 28 do not warrant a second post-conviction hearing, the Petitioner claims that he is entitled to relief pursuant to footnote 10 in Thaddeus Johnson, which states:

We . . . acknowledge that there could conceivably be a situation where counsel's egregious violation(s) of Rule 28 might impermissibly violate the limited due process requirements for post-conviction proceedings so as to warrant a second post-conviction hearing; however, we reaffirm that there is no legal authority for the proposition that a Rule 28 violation, in itself, justifies another bite at the post-conviction apple.

Id. at *9 n.10 (citation omitted). Although he relies on Thaddeus Johnson, the Petitioner fails to explain with any particularity how post-conviction counsel failed to follow the guidelines of Rule 28, choosing instead to claim that counsel failed to adequately present a laundry list of post-conviction claims. Additionally and most importantly, the Petitioner has failed to show how post-conviction counsel committed "egregious violation(s) of Rule 28." Id.

In this case, the Petitioner filed his pro se petition, and post-conviction counsel was appointed. Thereafter, the record shows that post-conviction counsel reviewed the pro se petition, diligently investigated the Petitioner's case, interviewed the relevant witnesses who could be found after an exhaustive search, filed an amended petition in which she developed several of the claims outlined in the Petitioner's pro se petition and incorporated the claims raised in the pro se petition, and then competently presented all reasonable claims at the post-conviction hearing. See Tenn. Sup.Ct. R. 28, § 6(C)(2). Post-conviction counsel also filed a certificate of counsel, certifying that she had "thoroughly investigated the possible constitutional violations," "raised all non-frivolous constitutional grounds," and made the Petitioner "aware that any ground not raised shall be forever barred." See Tenn. Sup.Ct. R. 28 § 6(C)(3), app. C. At the post-conviction hearing, post-conviction counsel presented testimony from Agent James Davis, trial counsel, and the Petitioner. While post-conviction counsel did not address every one of the Petitioner's claims, the transcript from the post-conviction hearing shows that she addressed the overwhelming majority of issues raised in his pro se petition. Moreover, the record is clear that during his post-conviction hearing, the Petitioner "was afforded every opportunity to present evidence and argument" on all of his post-conviction claims. See House, 911 S.W.2d at 711.

Notwithstanding the fact that he received a full and fair hearing, the Petitioner claims that he is entitled to the appointment of new post-conviction counsel, the opportunity to amend his post-conviction petition, and the chance to have a second post-conviction hearing on these additional grounds. However, the Petitioner fails to recognize that any issues not raised at his initial post-conviction hearing are waived. As Tennessee Code Annotated section 40-30-106(g) explains,

A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

(1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Additionally, Code section 40-30-110(f) provides, "There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived."

Because there is no constitutional or statutory right to effective assistance of counsel in post-conviction proceedings, the Petitioner's claim that counsel was ineffective at a prior post-conviction proceeding is insufficient to rebut the presumption of waiver. House, 911 S.W.2d at 706, 712. In other words, the Petitioner's claim of ineffective assistance of post-conviction counsel "does not establish a legal excuse for failure to raise the issues in the initial proceeding." Id. at 712. Even if we were to appoint new post-conviction counsel and allow the Petitioner to have a second post-conviction hearing, the Petitioner has waived any claims not presented at the initial post-conviction hearing. This is because "[w]aiver in the post-conviction context is to be determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney." Id. at 714 (footnote omitted).

We conclude that the Petitioner has failed to show that he is entitled to a second post-conviction hearing based on any deprivation of his due process rights. We reiterate that "[a]ll that due process requires in the post-conviction setting is that the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner." Stokes, 146 S.W.3d at 61 (quoting House, 911 S.W.2d at 711). Because the Petitioner received a full and fair hearing on his post-conviction petition with the assistance of post-conviction counsel, which is all that the law requires, he is not entitled to relief. See Charles Edgar Ledford, 2017 WL 837705, at *7.

## CONCLUSION

Based upon the aforementioned authorities and reasoning, we affirm the judgment of the post-conviction court.

---

CAMILLE R. McMULLEN, JUDGE

- 21 -